380649 in re Estate of Walter D. Frakes proceeds Walter Doyle Brady and Senator Emily Vickers for Spanoffs vs. Emily Thieme, Abigail Schneider, and William Thieme, counseled by Nicholas Haft. Mr. Haft. Good afternoon, Your Honors. Counsel for Appellees. May it please the Court, my name is Nicholas Haft and I'm here on behalf of the appellants Emily Thieme, Abigail Schneider, and William Thieme. I'd like to reserve three minutes for rebuttal. Okay, thank you. We're here today on appeal of a final judgment of the trial court for the summary admission of the decedents purported October 31st, 2011, unsigned will and to probate on October 1st, 2018. The standard reads de novo. Appellants believe that the trial court misapplied Illinois law by granting summary judgment in favor of appellees and against appellants. More specifically, we believe that the trial court committed a reversible error when one granted summary judgment in appellee's favor by misapplying Illinois law and taking all the facts in the light most favorable to appellee as the moving party in summary judgment and against appellants as the non-moving party. We believe if the facts were taken in the light most favorable to appellants as the non-moving party and a reasonable inference is drawn there from, that there undoubtedly would be material questions of fact which the trial effect should be able to assess. Were these cross motions for summary judgment? They were, Your Honor. So there was no, you really wanted to rule against the law, didn't you? Well, it would depend on the context of certain rulings made with respect to evidence. We believe that summary judgment would have been proper as evidence purportedly offered by the will's proponent would have been barred by the jury. And what does summary judgment ask for? Is it to dispute facts? A ruling is a matter of law. Okay. You follow them, they follow them, right? Correct. Okay. So that's what you're looking for. Well, we are looking for that assuming that the Court is willing to make the evidentiary rulings that the statements appear to be. I won't give up on it, so go on. All right. The second reason why summary judgment should not have been granted in favor of the will's proponent's appellees is that we believe the standard of law in Illinois when you have a missing will, which would be the case here. So assuming that this unsigned noncopy of a will that originally was filed blank then came in with a conformed copy and there's no actual signed copy in existence, assuming that this would be admissible by the affidavits of the witnesses, we still believe that the evidence clearly shows that the will was last in the possession of the decedent, the admissible evidence would show, and that it was validly executed. So if those two elements exist, it's our understanding that Illinois law would say, well, the will was presumed, validly executed, the decedent died and it cannot be found. So because it was last in his possession through admissible evidence, it's presumed revoked. What do you make of the fact that him calling the police and saying, hey, my safe was robbed and they stole a bunch of cash and whatever and my will? Well, I say the proponents of the will had filed two previous wills that the decedent had executed. They put no evidence that ever said that this purported October 31st will ever made any mistake in the first place. So I don't think there's any. If you're a lawyer, being a layperson, if I've got a will that is supplanted in my prior wills, are those prior, is one of those prior wills my will? To a layperson it might be, because at the same time, his two prior wills were executed in the attorney's office where this purported will was not. So we have nothing in the record to show that the last operational will was ever physically torn up or removed from the safe or was there to begin with. There's no facts as to what will, whether it was a copy of anything, saying what was originally in the safe. So what our position is, in order for anybody to get to the point where this is the will that was allegedly stolen, there needs to be some sort of foundation that was there in the first place. None of the standards of execution of this will follow the procedures of the original two where it was at the attorney's office, where there were copies made that had signed copies. This will was done allegedly at his office, and then it was taken by him. There's no, nothing that connects it to being taken home. There's nothing connected to putting it in the safe. He could have had the prior will that was affected and never removed it from the safe upon execution of this one. So, yes, a will was stolen. He's a layperson. He doesn't know which is the operative or he might not know. But at the end of the day, that's why this presumption of a revoked will exists is because once the decedent leaves with it and we can't trace where it goes, it's all guesswork. And that's why there's a presumption it's revoked and the other side has to rebut that presumption. So we believe the trial court first just said, look, if it was validly executed like you're asserting, he left with it in his possession and we can't find it. The ruling should be that it's presumed revoked. Now, the burden shifts from the objectors having to prove how it was affirmatively revoked by the statute to the proponents having to rebut the presumption and show that, no, in fact, this isn't missing. This is why it should be admitted. And, again, so we believe that the standard has to be first to make the ruling and then the presumption shifts and the burden is on the proponent of the will to have it admitted. And in with that, there should be an evidentiary hearing where you can assess simple questions related to, well, where is it? How do you know that it was in the safe to begin with? And more importantly, this will was allegedly executed five weeks after the decedent's daughter died in cutting out her whole stirrup, meaning before it was one-third, one-third, one-third to each of the children with the pre-deceased share going in their stirrups. Five weeks after she had died, he allegedly executes the new will where he knows this reportedly is stolen and has four years to do something and doesn't do anything. So, again, if this was his will, that operational will in the safe, as you suggested, would seemingly be obvious, well, then he knew it was gone. He had gone and done previous wills. He was so excited to cut out his one daughter's share that he did it five weeks after she died. So now four years passes from when it's stolen and it's his will, the only existing, there's not even copies, and he's not going to take any action. So we believe those type of factors would be things that would come up in an evidentiary hearing as to rebutting that presumption that we never got a chance to do. Finally, turning to your point regarding our request. Can I ask one more question? Sure. And that is, did you ask, before summary exemption was had, did you ask for an evidentiary hearing? No, we did not ask for an evidentiary hearing. And then the third way that we believe the trial court committed reversible error is when it denied our cross-motion for summary judgment. And the basis for this is we believe that the evidence that suggests in the trial court's opinion that the will was the will and was stolen should have never been admissible, that the statements of the decedent, the alleged statements of the decedent to the police officer, the report and the officer's testimony would equate to double hearsay. And so everything needs to be proved. And, again, I think it's a chicken and the egg. Without knowing that that purported October 31st will was in the safe, how can you get to any of these others? In order for his statement to come in saying this relates to the revocation of will, you have to first come to the conclusion, leap to it, that this will is the same will. Again, the record is devoid of facts of what happens after he signs it and leaves it in his presence and there's nothing. There's absolutely nothing in the record to say where that will went that he executed. We're assuming that or the court, the trial court was assuming that this will was the same one, but there's no facts. So in order for the hearsay exceptions to come in, that first takes the court taking a big leap without any factual basis to lay the foundation that this will. So it comes in through hearsay exception because it's his will? Well, how do we ever prove it's his will? We can't. And that's the whole basis of the presumption is we're doing a lot of guessing. What happened to it? Well, we don't need to go through that. The presumption is not. And they have to come forth with evidence to prove why it shouldn't be deemed revoked. Well, there's other policy considerations, either or not, and that includes the fact that the will's stolen to try to dissuade people from stealing wills that they're not too fond of, potential heirs or legatees. And so if it's stolen, the reason a stolen will is still good is because the law doesn't want to promote stealing wills that you don't like. If it's stolen, Your Honor, there was a police report filed that said he thinks it was stolen. And, again, even if things were stolen, we don't know that this October 31, 2011, will was one of those things that was stolen. So, again, all of this is that. And, again, that's where passage of time, I think, would come in play in rebutting the presumption because they'd say, look, this is a man who repeatedly made new wills. He acted on accordance of it. He knew you could. He knew this will was stolen, allegedly, by this fact basis. And he took four years, had plenty of opportunity to amend it, to create a new one, to do whatever when he knew it was stolen, and he took no action. And some could argue, and I think it would be a completely plausible argument, is maybe he thought he overreacted, executing this will five weeks after his daughter died. And, upon reflection, he decided, you know what, I don't want to cut the knot. I think it should go back to one-third, one-third, one-third, amongst my children and their children. So I think it's just as reasonable if we're making assumptions now where I'm saying all the facts and reasonable assumptions drawn therefrom should be in a non-moving party, I believe there's a plausible explanation for why he wouldn't have. You were both moving parties. So the question is, you just said your position is just as reasonable as his. So you're the trial judge. Under your argument, these are both reasonable views, just as reasonable, you said. So what's the trial judge to do? Well, I think it turns on the idea of the admissibility of evidence related to the will. And at the end of the day, I stand on a position that until there's something that lays foundation that the will referenced in the police report is that will by something that says it got from point A when he left the office to the safe, there's nothing that connects the two. That's a huge leap. When we know there's been multiple wills executed and there's no identifying information. So I believe that based on that, that's where our request for summary judgment could come in, is if you're going to take those things and say, look, I can see that you have no point B to get from A to C. Well, then we are entitled to summary judgment because there's no way they could prove a rebutted presumption. No further questions? Thank you. Mr. Spano. Thank you, Your Honor. I've only had a few opportunities to come up and address the appellate court. I want you to know I appreciate this opportunity because it reminds me of when I was a young lawyer and worried about everything I said to a judge. So when I come to the appellate court, I worry about everything I'm going to say. But I want to tell you this, right off the bat, I'm going to apologize to you because after reading Judge Schoenbein's order and then reading my brief, I should have just said in my brief one sentence, read Judge Schoenbein's order. He addresses every one of these issues. He gives citation to facts or facts in the record, citation to case law that supports his decision. This isn't a one-paragraph order, as you well know. It's a ten-page, single-spaced order. He spent more time probably writing that order than we did in our brief. We should have just had you read the order, to be honest. So let's address, as I hear it, I hear three different issues. One is that there were some contested issues of fact, and that's counsel's claimant. Judge Holdridge, you caught on exactly what I was thinking. How do you file a cross motions for summary judgment, and then after you lose yours, you say, oh, there's questions of fact? It doesn't make any sense. And if you look at the record and compare it to the argument, it's all speculation. He's asking, well, it could have been this or it might have been that, but there aren't any records or, excuse me, any facts in the records to support the position that this might have happened or that might have happened. So the standard which we spell out in our brief, Judge Schoenbein spells out in his order and counsel puts in his brief, is you can't rely upon speculation because speculation is not a reasonable inference from the facts, and that's all they're doing is speculating. So what do we know for sure? So you assume if there is a presumption because we can't find the will. Judge Schoenbein wrote about the presumption starts with the will has to be in the possession of the testator, last known to be in the possession. There's some cases that talk about if the testator walks out of the lawyer's office, it sounds like that's last in his possession. So either way, either you go with it wasn't last in his possession, so there's no presumption, or if it was last in his possession and you find a presumption, then all we have to do is show that there's something that indicates no intent to revoke the will. In fact, there's a Judge Schoenbein site in the Supreme Court case, In Re Matter of Page, that talks about, and that site is 1180 Illinois 576. It's an old case, obviously, but what it says is once the court decides that there's an indication that the testator did not intend to revoke, it doesn't matter what happened. You don't have to look any further. Once you establish that they didn't intend to revoke, then the presumption has been rebutted because the idea of the presumption is what? That we can't find the will, so he must have intended to revoke. Well, it doesn't take much of an argument or a very skilled lawyer to point out the fact that if that will was stolen and he reported it stolen, there's no intent to revoke, so there can't be a revocation. And that's the argument. That's the presumption that we're looking for, the presumption that he's asking for is for you to presume because we can't find it, it must have been revoked. And here there's clear evidence to the contrary. There's clear evidence that it was stolen. Stolen is not an intent to revoke. Okay, how do you respond to opposing counsel making the point that, what, four years from the reported theft, nothing was done by the testator? Well, we have to speculate because we don't have a whole lot of information on it, and the counteraffidavit that was filed after the hearing that was rejected wasn't considered. But Judge Schoenbein points out that even if I had considered it, it wouldn't have changed the outcome. And what's in that? That shortly after, he starts, Mr. Frakes is ill, he's seriously ill, he comes ill and eventually passes away. So if we're going to speculate on it, maybe he was so sick that he couldn't go out and execute a new will. Maybe he believed that his attorney had a signed copy sitting in his office and that was good enough, I didn't need the original. Because as counsel pointed out, he's a layperson. He has a conformed copy. He had a conformed copy. Correct. But maybe the conformed copy can be presented to probate court for admission. In fact, Judge, that's what we're appealing right there. He's appealing is that Judge Schoenbein says, yes, it will be entered into probate. So the question is. So there's nothing to prohibit a conformed copy. Well, I'm not aware of any case law that says you can't, in certain circumstances, submit a conformed copy. So a little bit of speculation. It's equally speculative that he knew very well that there's a will there. Right. So he could very well be thinking, so what? I know it's out there somewhere. My lawyer's got a copy. We'll just put that in there. Or put that into probate if I got it. No big hurry to run out and execute a new will or whatever. Correct. That's his position on it. So the question then becomes, does it establish a waiver? Do you waive it because you didn't do anything about it? Or was it your firm belief that your will was still good, you just didn't have the original copy, and you never got around to going to see your lawyer? And that happens all the time. What we have is the lawyer, Jack Booz's affidavit, that says he's been my client for a long time. I've done at least three wills for him. And he was his client up until death, because Jack is the one who's handling the probate initially. Right. He never came in to execute another will. He just never got around to it. All that information is in the file, which suggests that the client – in the record is Booz's – I think it's in the amended petition. It may be in the original petition. But somewhere in there he talks about how when his daughter passed away, he had made financial arrangements for the objectors. And that's why the daughter was written out of the will. But that's going outside anything we have to consider. It's way outside. Because what you have is you have no evidence of an intent to revoke the will, and clear evidence of no intent to revoke the will. Clear evidence of that. So that brings us around to, well, we don't have that evidence because it's doubled. I guess to back up, you start with the promise, because the will is not found on death. So the promise is that it is revoked. Presumption, sure. That is a presumption. So then you have to present evidence that says, no, this is – you're going to rebut that presumption. Correct. And what you have presented is that the affidavit from the attorney says, I've always been his attorney, and he didn't come back and make a new will. And the 911 call, a police statement to the police that his will was stolen. I don't know that that is definitive. I mean, you have the opinion, which case law says opinions don't resolve questions of fact, and the phone call that my will was stolen. And if it's the only signed copy – It's not a phone call. I don't mean to correct. But he goes out to the scene and talks to them and meets with them. Okay? And that's where I was going. If I can, I don't know if this will answer your question. I don't mean to cut you off. I'm sorry. Double hearsay. This double hearsay argument makes no sense to me. First of all, the judge never considered the police report. Okay? The police report was attached by Mr. Boos when he originally filed the amended petition. I think it was amended. The judge considered the testimony of the police officer. And the testimony of the police officer itself is not hearsay. It's not the police report we're worried about. It's his testimony. And then second, the second level is, according to counsel, is the statement of the gentleman himself, Mr. Frakes himself, that my will was stolen. But think about it. Do we care whether the will was stolen as much as we care about what his state of mind was? This statement is not offered to prove that the will was stolen so much as it's offered to prove that his state of mind was the thing was stolen and I didn't revoke it. And on top of that, you also have 8033, which says statements with respect to the will. And it gives you a list. One of those is revocation. This is clearly a statement that relates to revocation. I didn't revoke it. So it's accepted under 8033. And it's also offered for the purpose of his state of mind, his lack of intent to revoke the will. So that clears both levels of it. There is no hearsay. And that's the key point, I think, in response to your question, is that his state of mind was I did not intend to revoke this will. I don't think there's any evidence. They have not presented any facts to draw that issue into a contested fact. There's nothing there other than speculation. Well, maybe he did this. Well, they never proved he put it in the safe in the first place. Well, we didn't prove how he got it home from the office to the safe or whether or not he took it on a trip on vacation. But we don't have to prove that. What we have to prove is that he lacked intent to revoke the will, and that's clear from the record. There was no intent to revoke the will. And as I should have started, like I said when I started, I should have just asked you to read Judge Schoenbein's order. I'll stop early now unless you have additional questions. Thank you very much. Mr. Hanson, rebuttal. A few brief responses. The first thing I'd like to say is counsel keeps saying that it's clear from the record. I just want to get input out there. But there's nothing clear as to what transpired after the decedent left the attorney's office with his will. So when we get to that question of invoking the presumption, was it executed, did you leave with it, we know that. Everything else after that is complete speculation. We have no facts to say where that will went. Maybe it did go on vacation. That's a great point. It never came back, and that's why it's gone. We don't know any of that. That's why the presumption is there. Because to have the opponents to the will have to prove what happened to something that doesn't exist is an impossible task. So the idea is, look, if it's not there, you've got to prove why it's not. And, again, they keep going back to this idea of the 8033 and the revocation. And, again, the statements are admissible as his state of mind of not intending to revoke the will. That all turns on this question of that's the will. There's nothing in the record that shows that the will that might have been in the safe or he's reporting was in the safe is the will that was executed on the 31st. So everything with respect to that, so they're saying, well, the statements come in under 8033 because it's about his mindset as to revocation of a will. Well, that itself has to be predicated on a foundation that that will is the same will. And there's nothing in the record, and there never will be, of what happened to it. When he left, he could have thrown it in the garbage trawl, we know. We don't know, and that's the idea. The other point I wanted to clear up is with respect to the kind of argument of waiver of the time that passes. The way that that comes in and is impactful is if the presumption is laid and they have to rebut it, they're going to rebut it by trying to say all these things of, you know, you can talk about the loving relationship to the family after. There's different ways the case law says that you can prove it up. But we think that that same reluctance to do anything or non-doing anything in the four years would be weighed in that fact of rebutting the presumption. Because, again, he acted on multiple occasions to create new wills. He acted quickly after doing something, so we know that he knew the process and was familiar with going to get a will done. So what we're saying is that factor, that kind of waiver issue, comes into play when they're trying to rebut it. It's a factor to go against them and rebuttal and saying, well, of course, he meant for it to be revoked and it was stolen. We'd say, well, okay, assuming it is, why didn't he do this? So I think it's a factor that gets weighed in the overall test by the trier effect. And then, finally, the last point I want to make is. I'll give you a second. I want to ask you a question. Sure. Under your theory, how would one ever prove a will stolen? Because, of course, it doesn't really come into us. A will is not an issue until the testator is dead. For example. So how would you prove it? For example, spouses do a lot of wills together. And they take them together and they put them in a safe deposit box or safe together. And when one files a will report and is dead, the other one can testify as yes. When we left the attorney's office, we went home, we placed our wills in the safe. You can have evidence of what happened to it. Oh, yeah, he took this when he went home and he did that. So, again, in this fact pattern, we don't have that. So there are ways to prove when the will gets to say it's stolen. So when he says a will is stolen in my safe, the spouse can say, yeah, both of ours were in there. Mine was in there, too, and it was stolen. And there's no independent evidence from anybody as to what was in there except the decedent. And, again, those statements come in on a hearsay exception that is predicated on the idea that this is the will. So if you jump to this, the will, everything else is allowed. Why in the world would some garden variety thief steal a will that has no value? I would imagine, Your Honor, and this is speculation on my part, if you're a thief, you steal everything out of the safe, like somebody who steals a wallet. When you get into the alley, you take the money out and you throw the wallet in there because you don't care about the stuff that doesn't relate to you. So in that context, somebody who's stealing the cash might take everything else that's in there and not. But, again, maybe a will was stolen. The decedent may have reported a will was stolen, but we don't know that it was this will. We don't know that it wasn't the will before it that was in there before and never got taken out. Simply stated, the presumption's there because we have no idea when he left. So is it reasonable to presume that this guy who's got a superseding will keeps his old will in the safe and the new will somewhere else? I don't know. But at the same time, the two prior wills that were validly executed, they were complete copies made that had the decedent's signature on them. They were done through the formalities. They weren't done at the office and in this different way. So, again, his normal routine of executing wills probably ended up in the safe. I would imagine the last one had a better chance because it was in the normal course of how he had done the previous one. It was done at the attorney's office with copies being made. So, again, all of this is speculation. All we know is he purportedly executed it and left the office with it. What happened thereafter, we don't know. He could have torn it up when he left the building, and that's the idea of the presumption's there. Well, there's a statement to the police that my will was stolen out of my safe. Is that some evidence of what he did with it? Possibly. He said a will. He listed it on the contents of the safe. He didn't say my will of October 31st, my will I executed here. It just says a will. It's in a list of all other documents. The other documents have specifying information. You know, a make and a model of the title of the card was in there. This just says a will. So. Didn't he say my will? I believe the police report just says a will. What did the officer testify to? The officer testified in his recollection he had said his will. He had listed a will. And on the record say 161, it lists one will without any dating identifying information. So the simple point of this matter is that that will could have been any of the other wills, because we don't know that he took those out or they were in the safe. We don't know anything. And everything beyond that point is speculation. So for that reasons and the reasons before, we ask that the appellate court reverse the trial court and remand it down for hearing with instructions to first apply the presumption of revoked will and with instructions to have an evidentiary hearing to follow. Thank you. Thank you, Mr. Heff. Mr. Spanos, thank you. This matter will be taken under advisement. Britain's position will be issued. We have a brief recess for appellate change before the next case.